IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Miracle of Life, L.L.C.; Brooke Faville; Dr. Leonard Coldwell; and Dr. Thomas Hohn, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No.: 2:04-0307-23 |
| v. | ) ) | |
| North American Van Lines, Inc.; Atlantic Transfer & Storage Co.; and Stevens International Forwarders, | ) ) ) ) | **ORDER** |
| Defendants. | ) ) | |

This matter is before the court upon the following motions: (1) Defendant Atlantic Transfer & Storage Company's ("ATS") motion for summary judgment and (2) Defendant North American Van Lines, Inc.'s ("NAVL") motion for summary judgment. For the reasons set forth herein, the court grants both motions.

**BACKGROUND**

Plaintiffs Miracle of Life, LLC, Brooke Faville, and Dr. Leonard Coldwell are owners of a "TimeOut System," which provides health and stress relief services to individuals. Plaintiffs also sell licenses of TimeOut Centers and the TimeOut System, support, and related health care products to other health care providers. Around November 27, 2001, Plaintiff Dr. Thomas Hohn bought a TimeOut Center and the furniture, appurtenances, and products to continue this business in Germany, his country of residence. Dr. Hohn was to be the general manager of TimeOut Centers in Europe. He agreed to pay $100,000.00 per year for use of the system, and he ordered products from Miracle of Life, LLC in excess of $688,950.00 for the initial inventory necessary to conduct business.

Plaintiff Brooke Faville made arrangements to ship the office furniture and other items from Charleston, South Carolina, to Germany with ATS, a company that Plaintiffs allege was an agent of NAVL. On December 18, 2002, Dr. Hohn received a partial shipment of his goods. Upon delivery, Dr. Hohn complained to Faville that many of the items were missing and that others were damaged beyond repair, making his new business venture untenable. Faville contacted ATS by telephone, and according to Faville, an ATS employee said he would look into what happened to the shipment. However, Plaintiffs claim that ATS quickly handed the problem off to Pac Global Insurance Brokerage, Inc. ("Pac Global") and Stevens International ("Stevens"). In her deposition, Faville states that when she discovered that items were missing from Dr. Hohn's shipment, she immediately called Doug Wells, the ATS employee with whom she arranged the shipment to Germany. When asked about the substance of her phone call to Wells, Faville stated that she asked Wells what happened to the inventory and told him that Dr. Hohn only received half of it. The deposition continued as follows:

> Q.   What was Mr. Wells' response?
>
> A.   I'll look into it, something along those lines – I mean, he gave me the impression he would check from his end.
>
>      . . .
>
> Q.   What was the next conversation you had with someone from Atlantic?
>
> A.   A woman called me and said, call Michelle Dillan. I didn't know who Michelle Dillan was, but – so I was told to call Michelle Dillan and she gave me a phone number. So I called Michelle Dillan and said, I have this shipment that went to Germany and we are missing half the inventory; what's going on, and she said she would look into it.
>
> Q.   When you called Michelle Dillan, did you ask her who she was or who she worked for or anything?

> A. I don't believe I did. I just assumed that the woman – Atlantic was sending me to the right place, and quite honestly, I didn't understand that I was dealing with individual companies. I thought I was dealing with North American Van Lines, and this was my door-to-door shipment, that they had their own internal systems, what you're supposed to do when something goes wrong. So I was putting the responsibility on them to tell me what to do.
>
> Q. After you called this Michelle Dillan, wherever she was, did you have any conversation after that with people from Atlantic?
>
> A. I believe – I don't remember who it was who told me to call Pac Global, whether it was somebody from Atlantic or this Michelle. I just don't remember which one.
> But somebody eventually said – because I kept calling. I kept calling Michelle. I probably kept calling Atlantic, because Dr. Hohn was really mad, upset and this had compromised everything. We looked like crooks. And it was baffling because I couldn't believe this could happen.
> So at first it was like what on earth happened. So, whomever, one of them, somebody eventually said, you've got to call the insurance company, which was about the last thing I really wanted to do. I wanted the furniture.
>
> Q. Once you started talking with Pac Global, started communicating with Pac Global, did you have any further contact with Doug Wells or anybody at Atlantic after that?
>
> A. No, I don't think so.
>
> . . .
>
> Q. You didn't send any letters to them or anything, did you?
>
> A. No, I don't think so. Not that I can recall, anyway.

(Depo. of Faville at 42-45.)

On March 11, 2003, Plaintiffs filed, in writing with Pac Global, all claims, forms, and information requested by Pac Global. Plaintiffs never filed anything in writing with Defendants ATS or NAVL. However, after attempts to resolve their claim with the respective insurance

carriers,[1] Plaintiffs instigated this suit against Defendants Stevens, ATS, and NAVL on December 15, 2003, alleging various causes of action.  Defendant Stevens filed a Motion to Dismiss,[2] and Defendants ATS and NAVL filed Motions for Judgment on the Pleadings on the basis that Plaintiffs' claims were preempted by the Carmack Amendment to the I.C.C. Termination Act, 49 U.S.C. §§ 13101 *et seq.*  In an Order dated February 11, 2005, the court found that the Carmack Amendment preempted Plaintiffs' claims and granted Plaintiffs fifteen days to file an amended complaint stating a cause of action under the Carmack Amendment.  Plaintiffs did so, and following discovery, on September 15, 2005, Defendant ATS filed a motion for summary judgment; on September 16, 2005, Defendant NAVL also filed a motion for summary judgment.

## **STANDARD OF REVIEW**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  All evidence should be viewed in the light most favorable to the nonmoving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate."  *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

---

[1] Plaintiffs have brought a separate action (C.A. No. 2:04-2181-23) against Pac Global alleging breach of contract and bad faith refusal to pay a claim.

[2] On August 16, 2005, the parties stipulated to dismissal of Defendant Stevens.

4

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## **ANALYSIS**

In their motions for summary judgment, both ATS and NAVL[3] contend that they are entitled to summary judgment because Plaintiffs never filed a written claim as required by the bill of lading and applicable federal law. In response, Plaintiffs assert that they have complied with all requirements to bring a claim under the Carmack Amendment, and Plaintiffs contend that Defendants should be estopped from asserting the defense of failure to file a written claim within the nine-month period. Thus, the issues before the court are: (1) whether Plaintiffs satisfied the condition precedent to filing suit; and (2) if not, whether the doctrine of equitable estoppel applies to cure such defect.

---

[3] Defendant NAVL also asserts that it was not the carrier with whom Plaintiffs contracted to ship the goods, and therefore, NAVL is not liable to Plaintiffs under the Carmack Amendment. NAVL states that Plaintiffs' goods were consigned to ATS under an ATS bill of lading signed by Brooke Faville and that Plaintiffs' goods were later consigned to Stevens for international shipment under a Stevens bill of lading. (NAVL Mot. at 4, 5.) Plaintiffs claim, on the other hand, that they chose ATS based on their advertisements and assertions that they were agents for NAVL. Specifically, Plaintiffs assert liability against NAVL under the equitable theories of apparent agency and agency by estoppel. However, because Plaintiffs failed to file a written claim with either carrier and because Plaintiffs cannot invoke equitable estoppel, the court need not reach the merits of Plaintiffs' arguments regarding NAVL's potential liability.

5

**I.	Written Claim Requirement**

The Carmack Amendment provides for liability of carriers under receipts and bills of lading in interstate commerce, and establishes the right of shippers to bring civil actions in federal district court against a carrier alleged to have caused "loss or damage" to transported goods. *See* 49 U.S.C. § 14706(d).[4]  The Carmack Amendment "makes a carrier liable for the actual loss or injury to the property it transports" under a bill of lading. *Ward v. Allied Van Lines, Inc.,* 231 F.3d 135, 138 (4th Cir. 2000) (internal quotation marks omitted). "A bill of lading is essentially 'a transportation contract between a shipper/consignor (*i.e.* a seller of goods) and a carrier.' " *Alstom Power, Inc. v. Norfolk S. Ry. Co.*, 2005 WL 3076923, *5 (4th Cir. Nov. 17, 2005) (unpublished) (quoting *Paper Magic Group, Inc. v. J.B. Hunt Transport, Inc.*, 318 F.3d 458, 461 (3d Cir. 2003)).  The terms of the uniform bill of lading require:

> As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on

---

[4]  The Carmack Amendment states in relevant part:

> A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading . . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

49 U.S.C.A. § 14706(a)(1).

6

>   whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export), or in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

49 C.F.R. pt. 1035, App. B, § 2(b) (2005). "This language comports with the statutory directive that shippers be afforded no less than nine months to file a claim with the carrier and no less than two years to file a civil action." *Alstom Power, Inc.*, 2005 WL 3076923 at *5.

>   The claim must be in writing, it must be submitted within the time limits set by the bill of lading, and it must: "(1) [c]ontain[ ] facts sufficient to identify the . . . shipment . . . , (2) assert[ ] liability for the alleged loss, damage, injury, or deal, and (3) mak[e] claim for the payment of a specified or determinable amount of money."

*Id.* (quoting 49 C.F.R. 1005.2(b)). The purpose of the pre-suit written claim is not to allow the carrier to escape liability but to make sure the carrier has reasonable notice and enough information to begin processing the claim. *Id.* (citing *Siemans PowerTransmission & Distrib., Inc. v. Norfolk S. Ry. Co.*, 420 F.3d 1243, 1251 (11th Cir. 2005))[5]; *see also Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co.*, 241 U.S. 190 (1916) (stating that the purpose of a requirement in a bill of lading that a shipper present claims for damages in writing is not to allow the carrier to avoid liability but to "secure reasonable notice" for the carrier).

In the present case, Section 2(b) of the bill of lading issued by ATS and signed by Faville

---

[5] In *Siemans*, the Eleventh Circuit Court of Appeals held that a shipper must file a claim that satisfies the minimum filing requirements set forth in 49 C.F.R. 1005.2(b) before filing suit under the Carmack Amendment and joined at least the First, Second, Fifth, Sixth, and Ninth Circuits in finding that these minimum filing requirements apply to contested as well as uncontested claims. 420 F.3d at 1250-51.

provides: "*As a condition precedent to recovery, claims must be filed in writing* with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier in possession of the property when the loss, damage, injury, or delay occurred, within nine months after delivery of said property." (emphasis added). It is clear that this provision is within the limits of law and comports with the statutory language. Moreover, "[b]y the great weight of authority, compliance with the written notice requirement of section 2(b) of the bill of lading is mandatory, and verbal notice and even actual notice on the part of the carrier's employees will not suffice." *Allianz-Ultramar Cia, Brasileira de Seguros v. Norfolk & W. Ry.*, 668 F.Supp. 518, 519-20 (E.D. Va. 1987) (citations omitted); *see also Perini-North River Assocs. v. Chesapeake & Ohio Ry. Co.*, 562 F.2d 269, 272 (3d Cir. 1977) ("The Supreme Court early held that the Carmack Amendment required some written claim, although the particular form was dictated by 'practical exigency.'") (citing *St. Louis, Iron Mountain & S. Ry. v. Starbird*, 243 U.S. 592, 605 (1917) and *Blish Milling Co.*, 241 U.S. 190); *N. Pacific Ry. Co. v. Mackie*, 195 F.2d 641 (9th Cir. 1952) ("A study of the federal decisions, including those of the Supreme Court, makes it clear that some sort of written notice of claim is essential. It is not enough that the carrier had actual knowledge that damage occurred, or that an oral claim for damages was made."); *Culver v. Boat Transit, Inc.*, 782 F.2d 1467, 1469 (9th Cir. 1986) ("[A] shipper who is required by a bill of lading to make a written claim of damage within a specified time cannot recover damages if a written claim is not filed.") (citations omitted); *Urban Elec. Co., Inc. v. Cable Index*, 735 F.Supp. 29, 32 (D. Mass. 1990) ("Because Orzell, by his own admission, has failed to file a written claim with Conrail within nine months of receipt of the cables, its claim against Conrail is barred."); *Gen. Elec. Co. v. Brown Transport Co.*, 597 F.Supp. 1258, 1267 (E.D. Va. 1984) (holding that actual knowledge of a claim did not meet or substitute for the written notice

requirement even where a shipper sent a letter but failed to specify an amount of damages). In *General Electric*, the court stated:

> It appears to this Court that after balancing the interests of the carrier with that of the shipper, the ICC decided to require a written claim to specify a certain amount of damages unless such information is not immediately known. In such an event, the amount must be communicated to the carrier as soon as it becomes available. The commission attempted to balance the legitimate concerns of shippers who complained of carrier improprieties regarding the processing and disposition of cargo claims with charges of carriers that shippers often present spurious and frivolous claims.

597 F.Supp. at 1267 (citing *Ex Parte 263: Rules, Regulations, and Practices of Regulated Carriers with Respect to the Processing of Loss and Damage Claims*, 340 I.C.C. 515, 524 (1972)).

In the case *sub judice*, there is no question that both the bill of lading and applicable federal law required Plaintiffs to file a written claim with the carrier as a condition precedent to filing suit. However, Plaintiffs did not submit a written claim or any written statement whatsoever to Defendants ATS or NAVL. Rather, Plaintiffs contacted ATS by telephone and assert that "by evasion and omission, ATS directed Ms. Faville to look elsewhere." (Am. Resp. in Opp. to ATS at 6.) Specifically, Plaintiffs claim: "Defendants should be estopped from asserting the defense of no written notice. Plaintiffs did submit a full written claim to Pac Global Insurance Brokerage, where they were directed by ATS." (Am. Response in Opp. to ATS Mot. at 7.) Accordingly, although the court concludes that Plaintiffs did not satisfy the condition precedent to filing suit under the Carmack Amendment - namely, filing a written claim with the carrier - the court must determine whether the doctrine of equitable estoppel applies to cure such defect. *See, e.g., Perini-North River Assocs.*, 562 F.2d at 273 ("We do not question the accepted rule that actual knowledge on the part of the carrier cannot substitute for the written notice required by a bill of lading. The estoppel inquiry is not closed, however, simply by virtue of that principle.").

**II.      Equitable Estoppel**

"Estoppel occurs when 'one party has reasonably relied on the conduct or statements of another; if the relying party suffers harm as a result of this reliance, the inducing party can be estopped from disavowing his earlier conduct or statement.'" *Parramore v. Tru-Pak Moving Sys., Inc.*, 286 F.Supp.2d 643, 655 (M.D. N.C. 2003) (citing *Salzstein v. Bekins Van Lines*, 993 F.2d 1187, 1191 (5th Cir. 1993)). However, the doctrine of equitable estoppel "is not to be found lightly" and "cannot be invoked absent evidence that the carrier told the shipper not to file or otherwise led it to believe that filing was unnecessary to have its claim satisfied." *Imperial News Co., Inc. v. P-I-E Nationwide, Inc.*, 905 F.2d 641, 645 (2d Cir. 1990) (citation omitted).

In the case *sub judice*, Plaintiffs do not claim that Defendant ATS expressly told them not to file a written claim. Rather, Plaintiffs claim that ATS misled them into believing that a written claim was unnecessary. Plaintiffs state:

> ATS has managed to derail and circumvent any protections the Act could have provided to Plaintiffs. ATS never produced any results of a search that may have taken place in the warehouse when Ms. Faville requested it, nor did ATS provide forms or even tell Ms. Faville it would need a claim form at all. By evasion and omission, ATS directed Ms. Faville to look elsewhere, inferring there was nothing else they could do. In fact, although ATS told Ms. Faville it would conduct a search, ATS never requested notice in writing to ask what was missing as ATS owner Roth states would have been necessary for a search.

(Am. Response in Opp. to ATS Mot. at 6.) Nevertheless, after a review of the record including the parties' motions, the court concludes that even viewing the evidence in the light most favorable to Plaintiffs, the facts here are not sufficient to invoke the doctrine of equitable estoppel.

First, the bill of lading expressly set forth the written claim requirement, and Defendants had no further duty to notify Plaintiffs of their contractual obligations. *See Parramore*, 286 F.Supp.2d at 655 ("[T]hese requirements were specifically set forth in their bill of lading, with further

10

conditions included in the incorporated tariff. Defendants had no further duty to make Plaintiffs aware of the terms. That they did not specifically seek to advise Plaintiffs of these terms does not constitute misleading conduct.") (citation omitted). Second, there is no evidence that Defendants told Plaintiffs not to submit a written claim or told Plaintiffs that a written claim was unnecessary. Moreover, Plaintiffs assert that ATS directed them to deal with Pac Global Insurance; however, it is clear from Ms. Faville's deposition that she does not know who actually told her to call Pac Global. In any event, even if Defendant ATS did suggest that Plaintiffs file a claim with the insurance carrier, such a suggestion does not in itself imply that filing a claim according to the terms of the bill of lading would be unnecessary. *See Royal Ins. Co. of Am. v. DHL Worldwide Express*, 1999 WL 494118, *6 (S.D.N.Y. July 13, 1999) ("By suggesting that Ivoclar file a claim with its insurance carrier, DHL did not intimate that filing a written claim according to the terms of the contract was not necessary, and any reliance on DHL's statement to this effect would be unreasonable."). Also, just as it is of no consequence that ATS did not advise Plaintiffs of the terms of the bill of lading, it also is of no consequence that the telephone conversations with ATS provided it with actual knowledge of the claim. *See Imperial News Co., Inc.*, 905 F.2d at 645 (finding no compelling circumstances to warrant application of estoppel where shipper repeatedly telephoned carrier and carrier did not tell shipper to file written notice of a claim).

Ultimately, although Defendants certainly could have been more cooperative or helpful to Plaintiffs in their quest to remedy this unfortunate situation, Defendants did nothing to indicate that Plaintiffs would not be held to the contractual requirement of filing a written claim within nine months. Therefore, the court concludes that the doctrine of equitable estoppel does not apply to cure Plaintiffs' failure to file a written claim.

## **CONCLUSION**

It is, therefore, **ORDERED** for the foregoing reasons that Defendant ATS's motion for summary judgment is **GRANTED**. Additionally, Defendant NAVL's motion for summary judgment is **GRANTED**.

AND IT IS SO ORDERED.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**January 5, 2006**

12